IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**ROBERT A. MAGRO**,

    Plaintiff,

    v.

**MICHAEL J. ASTRUE, Commissioner of Social Security**,

    Defendant.

No. 3:10-cv-1005-MO

OPINION AND ORDER

**MOSMAN, J.**,

Robert Magro challenges the Commissioner's decision denying his claim for Supplemental Security Income ("SSI") disability benefits. This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

On December 12, 2007, Mr. Magro filed for Disability Insurance Benefits ("DIB") and SSI under Titles II and XVI of the Social Security Act. AR 10.[1] These applications were denied initially on April 25, 2008, and upon reconsideration on September 25, 2008. AR 10. An administrative law judge ("ALJ") held a hearing on November 25, 2008. *Id.* At the hearing Mr. Magro's attorney amended the alleged disability onset date to December 1, 2007, which precluded eligibility for DIB. *Id.* On March 2, 2010, the ALJ issued his decision denying Mr. Magro's applications. AR 22. The Appeals Council denied review on June 30, 2010, making the ALJ's

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on January 25, 2011.

decision the final decision of the Commissioner. AR 1. Mr. Magro timely appealed to this Court on August 25, 2010.

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). At Step One the ALJ found that Mr. Magro had not engaged in substantial gainful activity since the alleged onset date of December 1, 2007. AR 12. At Step Two the ALJ found that Mr. Magro suffered from lumbar degenerative disc disease, hepatitis C, an abdominal hernia, residual symptoms of a left ankle fracture, depression, borderline intellectual functioning, and alcohol dependence in partial remission. AR 12. Continuing to Step Three, the ALJ found that the combination of impairments does not meet or equal a disorder listed in the Commissioner's regulations. AR 14.

The ALJ next evaluated Mr. Magro's residual functioning capacity ("RFC"), finding that he could perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), but could use his left arm only as a guide for lifting; could not use ladders, ropes or scaffolds; could only occasionally stoop, crawl or climb ramps or stairs; and could only do simple, routine, repetitive work requiring no interaction with the general public. AR 16. At Step Four the ALJ found that Mr. Magro had no past relevant work experience. AR 21.

The ALJ continued to Step Five, relying upon testimony from the vocational expert to find that Mr. Magro could work as a motel cleaner, small products assembler, or a packing line worker, and that these jobs existed in significant numbers in the national economy. AR 22. Based on the Step Five finding, the ALJ denied benefits. AR 22.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. Finally, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## DISCUSSION

Mr. Magro's brief focuses on three issues: (1) Whether the ALJ properly evaluated the severity of Mr. Magro's impairments at Step Two; (2) whether the ALJ properly found Mr. Magro did not meet the listing for Mental Retardation at Step Three; and (3) whether the ALJ properly determined Mr. Magro's RFC.

**I.      Step Two Analysis**

Mr. Magro's first challenge is that the ALJ failed to consider his chronic pancreatitis, cirrhosis of the liver, blindness in the right eye, bicep disorder, and distal fracture of the left ankle.[2] Any error here was harmless.

Step Two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28)). Any failure to designate an impairment as "severe" at Step Two is harmless if the ALJ considered the impairment through the remainder of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding the ALJ's failure to designate the claimant's bursitis as "severe" was harmless error because the ALJ discussed bursitis in Step Four). I find that the ALJ discussed each of the impairments Mr. Magro would have classified as "severe" during his analysis.

   **A.      *Pancreatitis***

The ALJ discussed chronic pancreatitis, but accepted Mr. Magro's statement that "the pancreatitis doesn't bother him constantly, but only if he doesn't watch what he eats." AR 17. Impairments that can be controlled through diet are not disabling for the purpose of determining eligibility for SSI benefits. *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding that impairments controllable through medication cannot establish disability). Therefore, the ALJ did not err in his discussion of pancreatitis.

---

[2] Mr. Magro seems to concede his argument that the ALJ should have declared his hernia severe. Pl.'s Br. [12] 10. The ALJ did declare the hernia severe. AR 12.

### B. *Cirrhosis of the Liver*

Mr. Magro claims the ALJ failed to consider his cirrhosis of the liver. The ALJ discussed cirrhosis of the liver in conjunction with hepatitis C, a common cause of cirrhosis. AR 13 ("A review of the medical evidences reflects the claimant has . . . hepatitis C with cirrhosis and elevated liver function tests."). Mr. Magro argues that these liver impairments should have been discussed separately, but does not explain how a separate analysis would affect his RFC. In addition, the ALJ's treatment of the two impairments together is implicitly sanctioned by Mr. Magro's treating physician, Dr. Page, who also discussed his liver conditions as a single impairment. AR 475. Therefore, the ALJ did not commit reversible error by discussing the two impairments together.

### C. *Blindness*

Mr. Magro also claims that the ALJ failed to classify his blindness as severe, but Mr. Magro never established that he is actually blind. He claimed blindness in his left eye, but when further questioned admitted that it was merely a "lazy eye." AR 300–01. He reconfirmed that it was a "lazy eye," not blindness, at the ALJ hearing, testifying that, "if I get real tired I see double vision and stuff like that. My eye will go off to the side." AR 33.

Two doctors noted Mr. Magro's blindness. The first, Psychologist Tracey Hoffman, did not test or diagnose blindness, merely finding that, "[r]ecords indicate that he is blind in one eye." AR 470. The other, Dr. Page, included blindness in a list of other ailments but did not discuss how blindness might affect his employment. AR 474. This omission is remarkable given that her report did specifically discuss how his employment could be affected by such details as his grooming. AR 474. More importantly, the ALJ discounted Dr. Page's testimony, and Mr. Magro does not challenge that credibility determination. AR 20. Because Mr. Magro has not established his

blindness, and has twice contradicted it himself, the ALJ's conclusion is supported by substantial evidence.

### D.  *Bicep Disorder*

Mr. Magro next claims the ALJ should have classified his left bicep disorder as severe, but the ALJ found that Mr. Magro could only use his left arm "as a guide" for lifting, which is more limited than the limitations given by his physicians, which merely limited his grip strength: "His grip strength is reduced on the left compared to his right," and, "The claimant has decreased strength involving the left biceps measuring 4/5." AR 16, 457, 348. Because the ALJ incorporated the bicep disorder in the RFC, any error caused by omitting it at Step Two was harmless.

### E.  *Ankle Fracture*

Mr. Magro also argues that the ALJ failed to classify his distal ankle fracture as severe. Pl.'s Br. [12] 10. This contention is semantic. The ALJ labeled this impairment as "residual symptoms of a left ankle fracture," AR 12, rather than a "distal fracture of the left ankle," as Mr. Magro would prefer. Pl. Br. [12] 10. However, Mr. Magro seems to have abandoned this argument in his reply brief, after the Commissioner pointed out that the ALJ's terminology is more beneficial to Mr. Magro because the ALJ can only consider impairments that can "be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Because any impairment caused by an ankle fracture lasting more than 12 months would properly be called "residual symptoms," the ALJ properly classified the ankle fracture. *See* AR 37 (explaining at the ALJ hearing that his ankle was fractured for four months).

## II.   Step Three Analysis: Mental Retardation

Mr. Magro next argues that the ALJ erred by failing to find he meets the listing requirement for mental retardation at Step Three. If Mr. Magro meets the listing requirement for mental retardation, he is per se disabled. 20 C.F.R. § 416.925(a).

To meet the listing for mental retardation Mr. Magro must show that that he suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.05. There are four alternative tests that can be used to establish mental retardation. *Id.* Mr. Magro argues that he meets the third, which requires a full scale IQ score between 60 and 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.* at § 12.05(C). Because the ALJ's decision regarding Mr. Magro's IQ is supported by substantial evidence, I do not address any additional work-related limitations.

### A.    *IQ Between 60 and 70*

The ALJ rejected the tests Mr. Magro relied on to show his low IQ. When Mr. Magro was 14 years old he scored a full-scale 70 on an IQ test, within the required range by a single point. AR 465. However, the ALJ rejected this test because "the test was administered under significantly less than ideal conditions, including the fact that the claimant complained of an earache that day and experienced several interruptions during the course of the evaluation." AR 16; *see also* 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.00(D)(6)(a) (requiring examiners to consider "the narrative report that accompanies the test results" which "comment on whether the IQ scores are considered valid").

Mr. Magro concedes that the examiner noted "there were several interruptions during the course of the evaluation" but explains that the examiner also found that "Robert did not appear to be highly distracted by these interruptions." AR 465. While the ALJ found it significant that "Robert had earlier in the day returned home before reaching school due to an earache," Mr. Magro points out that, "He did not complain of any ear discomfort," during the evaluation. AR 466.

Whether the earache and interruptions might have lowered Mr. Magro's score by a single point, enough to fall outside the listing requirement, is not clear from the record. But that is not the question I am asked to answer. Instead, I must consider whether the ALJ's decision is supported by enough relevant evidence that a reasonable person might accept it as adequate to support a conclusion. *Lingenfelter*, 504 F.3d at 1035. The ALJ's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes*, 881 F.2d at 750. In my limited role, I find that the ALJ's decision is a rational interpretation of the evidence, so I do not remand the case based on this evidence.

Mr. Magro also points to an IQ test taken in April 2008, which showed similar scores. AR 303–305. Even the proctor of the test found the results invalid due to "acute alcohol intoxication." AR 305. The ALJ's decision to reject that IQ test is supported by substantial evidence because Mr. Magro was heavily intoxicated while taking it.

### III.  Step Five and RFC Analysis

Mr. Magro argues that the ALJ erred by failing to include all of his impairments in the hypothetical presented to the vocational expert ("VE"). Specifically, Mr. Magro argues that the ALJ omitted his limitations caused by illiteracy, blindness, his hernia, and his ankle fracture. The VE found that Mr. Magro could work as a motel cleaner, small parts assembler, or a packing line worker. AR 45–47.

#### A.  *Illiteracy*

The ALJ properly accounted for Mr. Magro's illiteracy when questioning the VE. Mr. Magro points out that small parts assemblers and packing line workers require level-two reasoning, which requires the ability to carry out detailed but uninvolved written or oral instructions. Pl.'s Reply [15] 4. Mr. Magro reads the final "or" as an "and," interpreting it to mean

that Mr. Magro must be able to carry out written instructions. Because he is illiterate, he cannot do this.

Mr. Magro's argument fails for two reasons. First, the VE clarified that Mr. Magro's interpretation of the Dictionary of Occupational Titles is incorrect by explaining that these jobs would be available to someone who could not read simple instructions. AR 48 ("Q: If the claimant can't read simple instructions, would that reduce, would these jobs still be available?" "A: Yes."). But even accepting Mr. Magro's interpretation, Mr. Magro's illiteracy focused on his inability to write; he conceded at the hearing that he could "read a little bit." AR 40.

Second, Mr. Magro's argument only addresses two of the three jobs suggested by the VE: small parts assembler and packing line worker. He fails to address the third job, motel cleaner, which does not require level-two reasoning. Instead it requires level-one reasoning, which does not require literacy. *See* Dictionary of Occupational Titles, Appx. C (defining level-one reasoning as: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."). So any error relating to the other two occupations was harmless.

### B. *Blindness*

Mr. Magro next argues the ALJ should have included his blindness in the VE's hypothetical, but the ALJ was not required to because as discussed above, Mr. Magro may not actually be blind. None of Mr. Magro's doctors found any work-related limitation caused by his eye disorder. *See* AR 349 ("There are no relevant visual . . . limitations."); AR 470 (noting blindness without testing or diagnosis, but not finding limitations based on it); AR 474 (noting blindness, but not finding limitations based on it).

### C. *Hernia*

Mr. Magro claims that his hernia limited him to sedentary work, rather than the light work used in the VE hypothetical. This argument is based on an evaluation by Dr. Robinson, which found that Mr. Magro had a "grapefruit-sized" hernia in his right upper quadrant, AR 346, and found that he could not stand for more than two hours in an eight-hour shift. AR 348. However, the VE's testimony took into account that Mr. Magro would not be able to stand when recommending occupations. The VE confirmed that Mr. Magro could work in the stated occupations even if he was "limited to standing less than two hours in an eight-hour day and can't stand for more than 30 minutes at a time." AR 48.

### D. *Ankle Fracture*

Finally, Mr. Magro argues that the VE's testimony did not consider that he must frequently elevate his leg to keep down the swelling. However, he testified at the ALJ hearing that he only elevates his foot in the evenings, AR 40, which the VE found would not preclude him from a day job. AR 48. Even if elevating his leg more frequently were required, the VE found he could likely elevate his legs during his breaks. AR 48.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence. Therefore, I AFFIRM the Commissioner's decision, and Mr. Magro's appeal is DISMISSED.

IT IS SO ORDERED.

DATED this   11th   day of July, 2011.

/s/ Michael W. Mosman  
MICHAEL W. MOSMAN  
United States District Court